Will counsel who will be presenting please approach the bench. And counsel for appellant? That's me. Good morning, Justice. I'm Matt Karchmar for the defendant appellant Marie Frye. And for the appellee? Ray Rittenhouse for the appellee plaintiff, Safe Auto Insurance Company. Okay. We'll be giving you 20 minutes each and there will be time for rebuttal, another 10 minutes for rebuttal. But if there's more time needed, we will be flexible. So would you like to proceed, Mr. Karchmar? Thank you. Thank you. Good morning, Your Honors. I'm Matt Karchmar for the defendant appellant Marie Frye. The case before you today for oral argument is relatively straightforward on the facts. It's really the legal application that I think we're here for today. Quickly, Marie Frye was a passenger in a vehicle that was involved in an accident that was a hit and run on May 14, 2012. The car was being driven by a Kenneth Reed. Kenneth Reed, unbeknownst to Marie Frye, had apparently did not have a valid driver's license. Was that admitted in the pleading? I'm sorry? Was that admitted in the pleading? It wasn't admitted because Mr. Reed did not appear in the case. He was defaulted. But we had no reason, and they had an abstract from the Secretary of State that said that it expired on 4-12-12, which 4-12 was his birthday, like most people's license expired. And he had renewed it May 15, the day after the accident, obviously, I'm guessing, realizing that his license had expired when the accident happened. Now, Safe Auto filed a declaratory judgment in this case under exclusion number 16 on page 13 of their policy, which says, if the driver used the covered vehicle without a reasonable belief that he or she was entitled to do so. The reason that this case is different from all other cases is because in the Founders v. Munoz case, the Illinois Supreme Court said that the reasonable belief exclusion as to the driver was not ambiguous and did not contravene public policy. What they said in that case, though, was that we need not speculate as to the myriad of other factual scenarios to which the reasonable belief exclusion might apply. Well, this particular case is one of those other myriad factual scenarios. The Illinois Supreme Court did not decide this issue in Founders v. Munoz. That dealt with a driver, not a passenger. The State of Illinois has a comprehensive mandatory insurance scheme under 625 ILCS 57317, called the Omnibus Clause, and 215 ILCS 514313A. And in the Progressive v. Liberty Mutual case, the court said that the principal purpose of this state's mandatory liability insurance requirement is to protect the public by securing payment of their damages. They also said in that case that insurers may legitimately limit their risks. My argument today is that by what the safe auto is trying to do in this case is not an insurer that's legitimately limiting their risks. In the American Access v. Reyes case, the Illinois Supreme Court in 2013 said that you cannot issue an insurance policy to someone who is the owner and the applicant and then exclude that person. They said that contravenes public policy. The circumstances in this case are even more egregious and also violate public policy. Counsel, you continue to make the argument that it violates public policy. Would you please identify the constitutional provision or statute that's violated, or the case? Yes, Your Honor. The comprehensive mandatory insurance scheme is what it violates, which is what the And it violates the entire scheme. But you've got to identify a specific provision or the provisions that are incorporated within the scheme. Could you just tell us the scheme? Okay. The 215 ILCS 5143.13a is the uninsured motorist provision. And basically the scheme exists such that there is mandatory insurance and secure payment of the damages of the people. The Illinois Supreme Court in the American Access v. Reyes case said you cannot do what they were trying to do in that case, which is issue a policy to somebody and then exclude that person right away. But there was a provision in the insurance code that specifically provided that you had to provide insurance to the name insured. They did not do it in the Reyes case. Is that correct? That is correct. They excluded the name insured. Now, tell me what provision is specifically violated in this case. I doubt that. I could. I would argue, Your Honors, that it is the public policy in general created by the In the Monroe v. U.S. Fidelity case, the Fifth District said that a passenger has standing to bring a declaratory judgment action. In that particular case, the court said there are far too many instances we can call to mind in which a passenger may not have his own policy to look to for recovery. Many people in our state, minors, elderly persons, and people who rely on mass transportation do not own automobiles and thus do not have their own insurance policy. When a passenger enters an automobile, he should realistically believe he is covered by the owner's policy. Safe auto's policy in this case and their provision would eliminate uninsured motorist coverage for people, innocent passengers, when the driver, unbeknownst to them, does not have a license. That is an overreach and an extension of the Illinois Supreme Court's ruling in the Founders v. Munoz case. Let me ask you this question, Counselor. In the Founders case, there were six cases that were consolidated, correct? Yes. And in those six cases, you had drivers, correct? They were all drivers, yes. Defendants. And in the Safe Auto case, or in the Founders case, none of those drivers were licensed, correct? Correct. But the people who were injured were unable to recover, correct? The people who were injured in those cases were the drivers. And they were unable to recover. Yes. Now, explain how those people who were unable to recover are different from the passenger in this case. Because the standard that the Illinois Supreme Court said in that case is that you're the one who's driving, you're the one who knows or should know that you don't have the license. It's reasonable and not against public policy to hold that against somebody. That is a much different situation than that happened in this case where you are a passenger. What are you supposed to do? Are you supposed to get into a car and say, excuse me, Mr. Driver, do you have your driver's license on you? May I look at it? May I go to the Secretary of State's office to pull an abstract to see if it's valid? There's simply no way that a passenger would be able to do that to ensure that the driver has a license to know that they're covered. And I've given the example that they talked about in Monroe. What if you have a child? What if you have somebody who's under the age of 18 who is a passenger in her dad's car, and unbeknownst to her, she's six years old, the father let his license expire three weeks ago? Under the Safe Autos policy and under this case, if the trial court is upheld, that minor six-year-old girl would not have uninsured motorist coverage if there was an accident involving an uninsured vehicle. Well, it's really the fact that the driver was unlicensed that permits the insurance companies to exclude the injured parties. Is that correct? Well, in the Founders v. Nuno's case, it was the driver that was the injured party. Again, this case is different. But the person that they were suing was unlicensed and there was no recovery, correct? Correct, for the driver. Okay, that's no different from this case. It is. It is. It is different because in this case, the injured person is an innocent passenger. The drivers in those other cases were not innocent? No. Because? Because they knew or should have known that their license was not valid. No, I'm talking about the people that were injured. Well, it was the drivers that were injured. I don't – just to avoid some confusion, my understanding of the Nuno's case, the only party seeking recovery were the drivers themselves against their insurance company, and the insurance company said to those drivers, not to anybody else, you didn't have a valid license. Therefore, you could not reasonably expect to be covered. As I understand Muno's, there were no third parties. There were no passengers seeking recovery. That is absolutely – that's absolutely correct. Just so I'm clear. Yes. And that's the difference that this case presents. The Rockford Mutual v. Economy Fire case, which was talked about in the Appley's brief, upheld what they call a named driver exclusion endorsement. In that particular scenario, you have somebody who issues – in that particular case, it was parents and their son was a named exclusion on the policy. The court said in that case that was all right. What they also said at the end of that case, though, is that the instant case is also distinguishable from the case where a passenger in an insured vehicle who is neither the policyholder nor named insured seeks to recover under that vehicle's uninsured motorist coverage for injuries sustained in an accident with a different uninsured vehicle. Such an instance is specifically contracted for in standard insurance policies. That's exactly what happened in this case because Kenneth Reed and Marie Fly got into an accident with a hit-and-run driver, a different uninsured vehicle. So even though the Appley is relying on this Rockford case, the language at the end of that case actually is for the appellant because it says that it's a different scenario when the people get involved in an accident with a different uninsured vehicle and that such an instance is contracted for in the standard insurance policies. Basically, if you have safe autos reading in this case, any passenger, if the driver, unbeknownst to them, does not have a license, suspended, revoked, it was expired, whatever the reason may be, is not going to be covered if they're involved with a hit-and-run driver or somebody that doesn't have insurance. And that is directly contravening public policy because of the comprehensive mandatory insurance scheme. There simply puts an undue burden on a passenger to determine, which is impossible for them to do, whether or not the driver has a license. You have so many scenarios where you have the elderly or you have a minor or you have somebody going into a taxi cab. There's simply no way for a passenger to determine definitively whether or not a driver has a license. It's not even including an emergency scenario. What happens if, you know, you have a husband who's taking her wife who's pregnant to the hospital because she's having the baby and his license expired three days before and they get into an accident with an uninsured driver? My question really to the appellee is, how does this not violate public policy? There's simply no answer to that question because if you allow this provision to stand, then all these people that are innocent passengers are simply not going to have a remedy when they get into an accident with an uninsured driver. There's really no answer to that question. The appellate court in the American Access v. Reyes case also said that it violated public policy. Now, the trial court in this particular case that we're here for today followed Munoz, and I think incorrectly, but the appellate court in the American Access v. Reyes reversed it and said that that was a violation of public policy, and I would submit to you, the appellate court in this case, that it's a violation of public policy to hold safe auto policy provision that basically excludes an entire class of innocent people for something that they have no control, knowledge, or would be impossible for them to determine whether the driver of the car that they're in has a license. And that includes, again, elderly people, minors, people who rely on mass transportation. What safe auto is trying to do is to illegitimately limit their risk, which the Illinois Supreme Court found in the American Access v. Reyes case. I'm happy to answer any more questions you have. I think that everyone understands the issues. Very well. And I'll save my remaining time for rebuttal then. Thank you. Thank you. Mr. Rittenhouse. Why does this not violate public policy? Because it is not against public policy per se to limit risk in insurance policies. The Supreme Court said so in the Bounders case. But public policy, would you agree, is to afford insurance coverage to permitted users, including passengers, of the insured vehicle, correct? To the extent that it's not otherwise excluded under the policy in an exclusion already approved by the court as a reasonable exclusion, not against public policy. What court has approved an exclusion for passengers where the driver is unlicensed? I would say the Supreme Court of Illinois in the Bounders case. Did they say that specifically? No, Your Honor. I'm not saying that. I am saying, though, that if you look at the language that the court employed, it is broad enough to encompass the passengers and intended to. It says permissive users. The court had already decided just two months previously. Did the court say we're limiting this to a very narrow issue? And that issue is, is coverage extended to drivers who are not otherwise eligible to drive? Didn't they say this is a narrow issue that we're dealing with? No, I don't respectfully agree that that was how they framed it. I think they looked at drivers and permissive users. And permissive users was already stated by the court just two months previously to include passengers. And I think they had to have that in mind when making this decision. And I think the decision is not overly broad. There are a number of instances in exclusions already approved by the Supreme Court in other decisions that would impact passengers in the same manner as this exclusion, according to the plaintiff, would impact passengers as well. The name driver exclusion, for instance, the counsel had made it a point that, well, nobody goes into an automobile and say to the driver, are you licensed? No one goes into the automobile and says, is your insurance up to date? Have you paid your premium? But there are instances where people will get into those vehicles and the driver is not licensed or he is not insured or he's even excluded from his parents' insurance or whatever the occasion may be. That's a specific named person in the policy where the founder's case dealt with the reasonable belief exception, the reasonable belief of the driver. How do you extend a reasonable belief of a driver that presumably they know their How do you morph that over to the other occupants of the car? How do they get that reasonable belief through osmosis or what? Well, I think the terminology of the reasonable belief is the terminology employed, but the court has framed it in terms of an objective standard. Is the person licensed or isn't he? Okay. And so the person is not. Is the standard as to the driver or to anybody who's in that vehicle? As to whether there is coverage afforded under the policy for the fact that the driver did not have a license at the time that he was operating the vehicle and, therefore, did not have a reasonable belief he was entitled to operate the vehicle. And that's consistent with the public policy of coverage for essentially innocent permitted users of the car where the public policy is, is that if you provide insurance in the state, you provide insurance not only to the named insured and the driver, but also to the permissive occupants of the car. Otherwise, yes, it is consistent because there are cases such as the Rockford case where the passenger is the driver was a named driver who had been excluded under the policy. The passenger was injured to the extent of death. But Ms. Fry had got no coverage whatsoever from this. She had motion to reconsider. It was denied. Right. The question of distinguishing her from others that may have coverage because of their own automobile. For instance, I have a policy, and if I get into an automobile with my brother and then we're in an accident and he doesn't have coverage, but I do, then I could seek recourse through my policy. Counsel says, well, but Marie Fry doesn't have a policy. She has no recourse. Well. But, you know, you've got Allstate and other carriers coming in and filing segregation claims while this is all going on. So they're going to dip in the pot before the victim is. Well, that was the issue in Munoz, and I did want to cover that. The plaintiffs in that case were the segregation carriers who had paid for the other vehicle, the medical payments and the collision damage, and they were segregating against Founders and Safeway. Against, for the conduct of the driver who could not reasonably have expected to be covered. Right. But in that instance, the tort fees are, I'm sorry, the tort victim had no recovery from Founders. Now, in that instance, they happened to be insured by Allstate and. They did have recovery. They had recovery. But if they were not insured. The policy was accommodated. But if they were not insured, they would have been in the same situation as Marie Fry is in now. Well, or perhaps the circuit court in those cases would have ruled in favor of them, and we never would have seen the case. I don't know. We don't know that, do we? Well, the court in Munoz did not say this only applies to situations where the other party has coverage. It did not limit it in that regard. It, in fact, said the opposite. It said, well, there are instances where there is no opportunity for recovery, and we understand that by creating this distinction. But that was acceptable public policy to the Supreme Court of Illinois, and I see no distinction in this instance. Would you agree that the premium charged by the insurance company reflected their actuarial analysis, as it were, of the likelihood of their insureds getting into accidents with uninsured vehicles? Certainly. And then also factor in through their limits on the amount they'll pay on a policy basis, per policy basis, per incident. The likelihood of the driver not being covered at the time, do you think that entered into the risk premium analysis? I'm sure it did. To what extent? Well, if you're asking me, did they do an actuarial analysis of the possibility of uninsured motorists and, therefore, pricing their uninsured motorist coverage, I'm certain that they must have. But they also included 16, more than that, I can't remember, but at least number 16 exclusion into their policy with an actuarial calculation. I'm certain as to whether these exclusions would be applied, and, therefore, their premiums calculated accordingly. I don't know. I never inquired of Safe Auto as to that circumstance, but it would stand to reason that if they're going to calculate their premiums based upon the likelihood of uninsured motorist claims, then they also calculate their premiums in accordance to their exclusions and the application of those exclusions. All right. So just to clarify, in my mind, there are no reported Illinois cases that stand for the proposition that you're advancing today. That is correct. If there would have been, I certainly would have brought it to the court's attention either way. I'm aware of a unpublished decision that did not address this issue, but it was collateral to the decision. Draper versus ‑‑ I don't remember. It's Draper, but it's an unpublished decision from last year, and this district, but it was not a part of ‑‑ the issue was the circuit court found different than the circuit court in my case, but they did not appeal that issue. What was on appeal was an issue regarding Section 155. So I will advise the court I'm aware of that decision. I know of no other. And I don't think that it's noteworthy in the sense that it's not published and that the issue itself that we're addressing today was not really brought out in the appeal. So your position is that your policy language is not against public policy? That's correct. Can you tell me why it is consistent with public policy? Yes. It's virtually identical to the language approved by the court in the founder's case. It looked at the language of the founder's policy and the Safeway policy, and other than the prefix to the exclusion, ours says if the driver, et cetera, there is talk about if any person or any user. Because the statute says that insurance applies essentially equally to drivers and passengers and permitted users. Yes. And that's, I think, helpful to our position in that regard. I think that if an exclusion applies, it will apply to all permissive users. Well, no, I think you're turning it upside down. The court was saying that you cannot exclude on a discriminatory basis between the category of occupant of the car, which is a lot different than a public policy of saying we want our occupants of vehicles to be covered by insurance. And if an insurance policy, A, is required, it has to include coverage of permitted users, drivers, and occupants. To say that the driver, and that's what the language in this policy says, the policy does not apply if the driver. So you characterize your insurers within the policy as drivers, members of the household, or permitted users or occupants. That's four different categories. But I would contend that the use of the word driver in the exclusion is simply a predicate to the exclusion. In other words, if the driver does not have a reasonable belief that he's permitted to use the vehicle, the exclusion applies. The exclusion is applied against all four policy parts, including the third part, which is the uninsured motorist policy. That raises another question. The term reasonable belief is usually a fact question. Did this come up at all in the trial court about whether Mr. Reed had a reasonable belief? Because it seems to me on its face that he gets in an accident today and then tomorrow, the next day his license was reinstated. That does not indicate to me a suspension, revocation of a very serious nature. It seems like a technical statutory glitch or something. He didn't pay a fee, a fine, or whatever. He didn't go in and renew. He didn't know. No, he didn't go in and renew. I don't know whether he knew or not knew. I don't either. So isn't that a fact question that perhaps should have been decided? No. Two points. Yes, it was considered in the circuit court. The issue was what is our standard in Illinois? Does it include a subjective analysis? What did he know? And why was he unable to operate the vehicle or didn't have the license? Or is it a bright-line test? It's, I believe, clear that in Illinois we just threw out the subjective aspect of it and went with the objective idea. Do you have a license or don't you? Then the exclusion applies. Rather than get into a permissive use analysis, which is how other states handle this exclusion, Illinois made it an objective standard. Do you have the license or don't you? Are you entitled to drive or aren't you? When you say Illinois did that, are you saying they did that through the Supreme Court decision or by statute? Yes, Your Honor. Through the Supreme Court decision. Under founders? Yes. I think we've covered most of what I had to say in regards to prepared remarks. I do want to address what I think is a key point that the Court is focusing on, and that is, is any limitation of coverage a per se violation of public policy? And it's clear from my reading of the founders' case that they say no. Within limitations acceptable to the Court, there are exclusions that are not against public policy. The name driver exclusion has been approved by the Supreme Court. The food delivery exclusion and the reasonable belief exclusion have all been approved by the Supreme Court of Illinois. Their application into whether an individual is covered or not is based upon approved exclusions. If Kenneth Reed was delivering pizza while Marie Fry was a passenger in his vehicle, the exclusion would have applied, would apply to Marie Fry. If he was, if she was a passenger such as in the Rockford case of a named, named excluded driver, she would not have the opportunity for recovery. The fact that she does not have her own policy is, would be, if you're going to look to protect those individuals, you would be carving out a niche different from the language of the exclusion itself. You would be rewriting the exclusion in such a manner that would be protecting only a narrow class of individuals that I don't think would be appropriate under the circumstance. The exclusion has been approved as essentially written. I think it's from our viewpoint. Well, you say, you keep saying it's approved as written, but the case that you're relying on that you claim approved this dealt with a very narrow fact situation and a very narrow category. They didn't, they dealt with drivers, right? But they did not limit it to the drivers. Because they said we're dealing with, that's an exact quote out of Founders, we are dealing with a narrow issue. And then they said drivers who are not licensed to drive, can they reasonably expect to be insured? Paraphrasing, but they used the term narrow. If they were broad and expansive, you might have an argument from my perspective. But to morph dealing with a driver who is unlicensed and applying that reasonable expectation of insurability to the driver and then saying that's not reasonable and therefore anybody else in the car who doesn't know about it also has that knowledge imputed to them, really seems like a major leap. I'm not, maybe I'm being misunderstood. I'm not saying that that person should have the knowledge impugned to them. I'm saying that the exclusion applies in the circumstance such as this where the driver is not licensed. It would apply to the passenger as it does to the driver. It would apply if Marie Fry was a pedestrian on the roadway and Kenneth Reed struck her and caused injury to her then. She would be in no different situation than she is today. In a liability situation, the exclusion would apply. There's no question in that regard. It applies if it is applicable to the third part of the policy as equally as it is applied to the liability portion of the policy and the court decision did not in any way question that. I guess that's the best way to say it. The decision I think supports the viewpoint that it is applicable in this instance as it would be in the liability instance. The situation as it would apply to the otherwise uninsured individual, Marie Fry, as a pedestrian, is no different than her situation now as a passenger. But a pedestrian wouldn't be invoking the uninsured motorist provision against Mr. Reed. No. What I'm saying is that there's no reason to see it any differently for that policy provision as you would for the liability provision. Why is there a distinction between the two? The issue is the same. The exclusion deals with the license of or the right to drive of Mr. Reed. Why is it different in the liability position than it is in the uninsured motorist? Its impact to the other individual would be the same. Except he took himself out of the equation by dropping out of the case. Right. I'm talking about the application of the exclusion. But, yes, I can't address why he never engaged in the case. I can't speak for him. But as far as the application of the exclusion, it certainly would apply in a liability situation. It certainly would apply to an individual who has no other recourse in a liability situation. The way the policy is written, it is written to apply to the uninsured motorist portion of the coverage. It would have the same impact. I don't know that there's any, if there's no other questions, I don't see any. I think we've addressed everything I was going to address in the prepared remarks, and I don't want to repeat ourselves. As Mr. Reeds must be aware from the case, did it involve any settlement or other type of? No, Your Honor. We obtained service on him. We didn't seek to default him until we were moving for summary judgment. Didn't, frankly, connect that we had not defaulted him previously or moved to default him previously, and then so we kind of combined it with the motion for summary judgment. So the court itself did not specifically rule on the motion for default, but, in effect, he's been defaulted. But, no, we had no contact. Our office certainly didn't, and as far as I know, Safe Auto did not. Thank you, sir. Thank you. Thank you, Your Honors. A few issues that I want to address from Ampli's argument. Number one is in Munoz, what the court said was we also need not speculate. Which page are you reading from?  This is ads. I'm not sure of the page, Your Honor, but it does say, we also need not speculate as to the myriad of other factual scenarios to which the exclusion might apply. The issue before us is much narrower. The issue is whether, as a matter of law, a person without a valid driver's license can have a reasonable belief that he or she is entitled to drive.  I know there was some discussion about Mr. Reed and what he knew or didn't know. My understanding of Founders v. Munoz is that it's irrelevant whether Mr. Reed, at the time of the accident, knew or didn't know that his license had expired. Didn't it say, though, that this could apply to other factual circumstances? It did, but my understanding under what the only Supreme Court said in Founders v. Munoz is that basically if it got expired somehow without his knowledge, it's an objective standard, basically a hard-line rule that if you didn't have a license, then it's an objective. And as to the driver, they wouldn't have a reasonable belief. They didn't really specifically address the issue whether or not, for example, somebody moved and their license expired, and they didn't know it, and the notices from the Secretary of State, they didn't receive them by the mail. But my understanding in reading Munoz is that it's an objective standard as to the driver. But they specifically said that it's a narrow issue, and they weren't addressing some of the other issues. And the other issue is the one that we're here for today. And Safe Auto's policy is different from the policies in that one, because it says that it excludes everybody if the driver did not have a belief. Your Honor talked about the four different categories, the driver, the house, somebody in the household, a permitted user, and an occupant. Well, the Safe Auto policy excludes all four of those categories if just the driver didn't have a reasonable belief because their license was expired or suspended or whatever. I would say that there's no way that Safe Auto could have included that in their premium calculation, because there's no Illinois case that has ever held that before. So they would have had no reason to include that in their premium calculation when they did it, because that wasn't the law. Safe Auto is trying to make law by this particular case, and I think the trial court made a mistake by overextending the Munoz case. What Safe Auto is trying to do here is do an illegitimate limit of their risk, and it clearly contravenes public policy for the same reason that you just simply, I mean, what are people supposed to do? Are they supposed to buy insurance as a passenger? People can buy insurance if they're a non-owner's policy, but a lot of the reason that people are passengers is they can't afford insurance, and that was discussed in the Monroe case that I read, Your Honors. So basically what Safe Auto is trying to do here is create a separate class of people that were going to have to buy insurance if they're a passenger in a vehicle that a driver doesn't have a license for whatever reason. Well, a lot of people cannot afford insurance even when they have a car. It's certainly to have a burden on them to buy insurance as a passenger when they don't even own a vehicle, I mean, that's simply an undue burden on them, and it's an illegitimate extension of their risk. Counsel, I want to ask you just one last time. Sure. Could you tell me the constitutional provision or statute that the exclusion conflicts with? It's the General Comprehensive Mandatory Insurance Clause. Could you be more specific than that? I need a specific provision. 625 ILCS 57317, which is called the Omnibus Clause, as well as 215 ILCS 5143.13a, which talks about the uninsured motorist coverage, should apply to the same thing as liability coverage. Can you give us those again? Yeah, a little slower. I'm sorry. 215 ILCS 5-143-13a, that's the uninsured motorist provision. There is no specific law that says that you cannot exclude passengers because the driver doesn't have a reasonable belief, because that's never come up before. Just like in the American Access v. Reyes case when the appellate court in the Illinois Supreme Court said that you can't have an exclusion in that particular case of the only insured. The Illinois Supreme Court has held that unless a contractual provision conflicts with a constitutional provision or statute or some decision that's been made, it is not against public policy. And I would argue that the whole scheme that Illinois has of comprehensive and mandatory insurance does contravene. And I point out to the Supreme Court of Louisiana in Adams v. Thomas, and this is in our original brief that we filed, dealt with this exact issue. In Adams v. Thomas, it's at 729 Southern 2nd, 1041, in Louisiana, 1999. Give me that citation. Sure. Adams v. Thomas, 729 Southern 2nd, 1041. This is Louisiana from 1999. The highest court in that state ruled that passengers were covered under a driver's policy even when the driver's license had expired. After noting that Louisiana's law provides a mandatory comprehensive scheme for the protection of the public from damage caused by motor vehicles, the court reasoned that denying coverage based on an invalid license of a permissive driver puts an undue burden on the name insured to determine whether the prospective operator is legally entitled to operate the vehicle and would make granting a permissive use a difficult, if not impossible, test. That's exactly what the... Are there six other states that follow this? I'm sorry, what? Six other states follow this? Follow which? What you're saying. I'm actually not sure how many states follow this. I know that in the American Access v. Reyes case, the Illinois Supreme Court cited a different Louisiana case, which was, I believe, the Williams v. U.S. agencies. So even the Illinois Supreme Court looked in that circumstance for other jurisdictions that had a similar issue, and this one is exactly with the Adams v. Thomas case that we're here for today. Basically, you're going to make people buy passenger insurance if you uphold this safe autos provision in the policy, and it contravenes public policy because the general mandatory insurance scheme, there is no specific law that says you can't do this. That's the court's determination as to what's public policy and what's not public policy. There are some cases where the court has said this is against public policy. There are some cases that they've said this is okay, you can do these kinds. In this particular case, what Safe Auto is trying to do is an illegitimate and overreach and extension. And because of that, I would ask you to reverse the circuit court orders of September 16, 2013, that granted Safe Auto's motion for summary judgment. I would also ask you to reverse the trial court's order of May 7, 2014, which denied the defendant appellant's motion to reconsider. Is this an issue that requires additional legislative viewing? I would say that any issue like this, like the Founders v. Munoz case or the Rockford case or the American Access v. Reyes case, is always a situation where if the legislature wants, they could address the issue. The legislature in Illinois seems to be busy with a million other things right now. I don't think they're focusing on this issue. And it's basically for the courts to determine in some circumstances they have, in some circumstances they haven't, whether or not a particular provision violates public policy. And I would argue that this one from Safe Auto absolutely does. Thank you, Your Honor. I think the page you're looking for is 440. Is that from the narrower exception? Yes. So that would be Founders v. Munoz, 237 Illinois 2nd at 440. Right. Thank you. Thank you, Your Honor. Thank you. Thank you very much for your presentations, and we are adjourned.